**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PAUL P., Plaintiff, -against- COMMISSIONER OF SOCIAL SECURITY, Defendant. | 25-CV-2890 (OTW) **OPINION & ORDER** |

**ONA T. WANG, United States Magistrate Judge:**

Plaintiff Paul P.[1] ("Plaintiff") filed the instant action seeking judicial review of the Commissioner of Social Security's ("Defendant") denial of Plaintiff's application for Supplemental Security Income, after it was previously remanded by Judge Cott on March 9, 2022. The parties consented to magistrate judge jurisdiction on April 10, 2025. (ECF 6). Plaintiff contends that Administrative Law Judge Mark Solomon (the "ALJ" or "ALJ Solomon") erred because the ALJ's decision was not supported by substantial evidence and because he failed to apply the correct legal standard to the evidence. (ECF 16 at 4). For the following reasons, I agree. Accordingly, Plaintiff's motion for judgment on the pleadings is **GRANTED** and this case is **REMANDED** for further proceedings consistent with this Opinion and Order.

[1] Plaintiff's name has been partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## I. BACKGROUND

### A. Administrative Proceedings[2]

Plaintiff first applied for SSI benefits on June 8, 2016, alleging a disability start date of June 14, 2012. (ECF 16 at 4). ALJ Solomon held a hearing on April 24, 2019, at which Plaintiff, medical expert Jack Greenberg, and vocational expert Melissa Fass-Carlin (the "VE") testified. On May 8, 2019, the ALJ found Plaintiff not disabled and denied his claims. After the Appeals Council denied Plaintiff's request for review on June 5, 2020, Plaintiff filed his first federal case on July 31, 2020. *See* 20-CV-5975. The parties consented to magistrate judge jurisdiction and Judge Cott issued his Opinion and Order (the "2022 SDNY Remand Opinion") remanding for further proceedings on March 9, 2022.

Plaintiff claimed, as he does now, that he is unable to work mainly due to major depressive disorder and post-traumatic stress disorder ("PTSD"). (2022 SDNY Remand Opinion, R. 1500). He was diagnosed with schizo-affective disorder[3] in 2003, first began seeing a therapist when he was seven "after verbalizing suicidal ideas to his mother." *Id.* at 1501. Plaintiff had several psychiatric hospitalizations in 2003 and 2004, and attempted suicide in April 2003. *Id.* Plaintiff was incarcerated from 2012 to 2014 and for five months in 2018. Both before and after those

[2] The administrative record was filed at ECF 9. The Court takes the prior procedural history from Judge Cott's opinion on remand ("2022 SDNY Remand Opinion"), which is found at ECF 9-5 at R. 1498-1545, and also at 20-CV-5975 (JLC), ECF 29.

[3] "Schizoaffective disorder" is defined "in DSM–IV–TR, an uninterrupted illness featuring at some time a major depressive episode, manic episode, or mixed episode concurrently with characteristic symptoms of schizophrenia (*e.g.*, delusions, hallucinations, disorganized speech, catatonic behavior) and, in the same period, delusions or hallucinations for at least 2 weeks in the absence of prominent mood symptoms. DSM–5 and DSM-5-TR identify the mood episodes only as either major depressive or manic and emphasize that mood disturbances must be present for a majority of the time. Also called schizoaffective psychosis; schizoaffective schizophrenia." *Schizoaffective Disorder*, APA Dictionary of Psychology, https://dictionary.apa.org/schizoaffective-disorder (last visited Sept. 25, 2026).

periods of incarceration, as relevant here, Plaintiff treated regularly with mental health professionals.

At the time of his first federal filing, Plaintiff received most of his treatment at Community Counseling & Mediation ("CCM"). He had weekly psychotherapy sessions with Nickeema Lyte (Cox) between 2015-2017 and began treating weekly with Jing An beginning in 2018. *Id.* at R. 1502-1505. Two nurse practitioners, Stacie Dee and Tom Perron, also treated Plaintiff at CCM for medication management. *Id.* at R. 1505-1507.

Plaintiff was also evaluated on July 7, 2016, by an internal medicine specialist, Aurelio Salon, M.D., and on July 21, 2016 by Haruyo Fujiwaki, Ph.D., a consultative psychologist. At the consultation with Dr. Fujiwaki, Plaintiff reported that he had last felt suicidal "a few months ago." *Id.* at R. 1507-1508.

Dr. O. Fassler, Ph.D., reviewed Plaintiff's records and submitted a Medical Determinable Impairments and Severity Form on August 24, 2016. Dr. Fassler opined that Plaintiff had "mild difficulties in maintaining concentration, persistence or pace, and moderate difficulties in maintaining social functioning." (R. at 1509). Further, Dr. Fassler opined that Plaintiff was "moderately limited" in his interactions with potential coworkers or the general public. (*See* R. at 1509-10).

At the hearing, Plaintiff argued that his "severe" psychiatric problems rendered him unable to work. Plaintiff testified, *inter alia*, that he was fired from his last job for "com[ing] in late all the time," and that his PTSD disrupted his ability to work a full eight-hour day. *Id.* at 1510.

Plaintiff further testified about his memory problems, his past hospitalizations, and his mental health status.

As relevant here, the VE testified in response to the ALJ's questions that there would be no jobs Plaintiff could perform if Plaintiff were "unable to tolerate normal stress in the workplace," "no useful ability to work in coordination with or proximity to others without being unduly distracted," or off work for more than five percent of the workday. *Id.* at 1513. The VE also testified "that a hypothetical person who could not interact with supervisors and would have to miss more than one day of work per month," all of which An opined would be the case, would not be able to perform any jobs in the national economy. *Id.* at 1544.

**B. The 2022 SDNY Remand Opinion (R. 1498-1545)**

Judge Cott remanded Plaintiff's case on March 9, 2022, finding that the ALJ failed to properly apply the treating physician rule. Under the treating physician rule as applied in the Second Circuit, Judge Cott found that, *inter alia*, ALJ Solomon did not properly develop the record, did not afford therapist An's opinion controlling weight,[4] and did not explain, under *Burgess*, why he did so, even though she was the only treating source in Plaintiff's records to date. *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

After finding that Ms. An's opinion was not persuasive, ALJ Solomon did not sufficiently develop the record. Ms. An had continued to treat Plaintiff for several months in the period between 2016 and 2019, when ALJ Solomon held the first hearing, and the ALJ did not seek an updated medical source statement. Moreover, as Judge Cott noted, there were other treating

[4] Although Ms. An was not required to be considered a "treating physician," ALJ Solomon explicitly considered Ms. An's opinion 'as that of a treating source,' and the Commissioner did not appear to object. R. 1537.

providers who had treated Plaintiff in the years preceding the 2019 hearing for which there appeared no effort at all–let alone "every reasonable effort"–to obtain medical source opinions from these providers. (R. 1533); *Starr v. Comm'r of Soc. Sec.*, No. 20-CV-4484 (GWG), 2022 WL 220408, at *5 (S.D.N.Y. Jan. 26, 2022).

These deficiencies resulted in the ALJ giving "little [to no] weight" to Plaintiff's treating providers,[5] and relying on a consultative examiner and a non-examining source to find Plaintiff not disabled, which is contrary to Second Circuit case law. (R. 1534, citing cases) Moreover, ALJ Solomon failed to explain how and why An's findings were inconsistent with the record as a whole. (R. 1542).

These deficiencies alone warranted remand, but Judge Cott also noted, in *dicta*, other deficiencies, such as failing to develop the record by seeking an updated consultative psychological examination (R. 1536 at n. 13).

Finally, Judge Cott noted that these errors were not harmless because An indicated that Plaintiff showed "marked or extreme" limitations in interacting with the public, getting along with coworkers and peers, and maintaining generally social behavior, and that Plaintiff would miss three days of work per month for medical appointments. (R. 1544). Judge Cott found these opinions "particularly significant in light of" the VE testimony–elicited by the ALJ–that a hypothetical person who could not interact with supervisors and would have to miss more than one day of work per month would not be able to perform any jobs in the national economy. *Id.*

[5] Although Ms. An was the only treating source considered by ALJ Solomon in his first decision, Judge Cott noted that at least 2 other providers treated Plaintiff at CCM which were not even mentioned at all by ALJ Solomon. (R 1533).

**C. The ALJ's Decision After Remand**

After a hearing on April 4, 2023, at which Plaintiff, Dr. Efobi and VE Jubrey testified, the ALJ issued an 12-page decision again denying the application for benefits. (R. at 1438-1449). In the Findings of Fact and Conclusions of Law, the ALJ found at Step One that the Plaintiff had not engaged in substantial gainful activity since June 8, 2016. *Id.* at 1441. At Step Two, the ALJ found the following "severe" impairments: major depressive disorder and generalized anxiety behavior. Although the Plaintiff apparently had also been diagnosed with posttraumatic stress disorder and schizoaffective disorder, the ALJ stated, without explanation[6],"these are diagnoses of exclusion," and found that they had not been established. *Id.* The ALJ then spent 2 paragraphs discussing Plaintiff's physical ailments, like his vision impairment and dermatitis, lumbar disease and ulnar nerve injury, all of which had existed at the prior hearing and which had not been considered to be serious enough either in the ALJ's first assessment or in Judge Cott's remand. *Id.* At Step Three, the ALJ considered whether Plaintiff's impairments met the following Listings: 12.04 (depression, bipolar and other related disorders) and 12.06 (Anxiety and obsessive-compulsive disorders) and concluded that they did not. Specifically, the ALJ found no "extreme" or "marked" limitations and only "no more than" or "up to moderate" limitations in the paragraph B functional criteria in understanding, remembering or applying information, and "interacting with others," and only "mild" limitations in "concentrating, persisting or maintaining pace," and "adapting or managing oneself." (R. 1442). Similarly, as to the "paragraph C" criteria, the ALJ found that the "record fails to demonstrate a medically

[6] The ALJ did not explain his finding, but Dr. Efobi, the consultative expert, testified: "The first would be a rule out for schizoaffective disorder. This was something that came up earlier in the record but didn't have much support. . . . and there is a rule-out for PTSD. This has minimal support." (R. 1475-6.)

documented history of the existence of a serious and persistent mental health disorder over a period of at least 2 years, along with evidence of medical treatment mental health therapy, psychosocial support or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the mental disorder." *Id*. at 1442-43.

At the last step of the analysis, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels, but with . . . non-exertional limitations" such as remembering, understanding and carrying out simple instructions, using judgment to make simple work related decisions, adapting to routine and occasional changes in the workplace, routine contact with supervisors and coworkers, and occasional contact with the general public. (R. at 1443). The ALJ's decision did not make any findings or discuss whether Plaintiff would be off-task at all during the workday, or whether he would be absent one or more days per month. *Id*.

**D. Procedural History**

Plaintiff applied for SSI benefits on June 8, 2016, alleging a disability start date of June 14, 2012. (ECF 16 at 4). ALJ Solomon held a hearing on April 24, 2019. On May 8, 2019, the ALJ found Plaintiff not disabled and denied his claims. After the Appeals Council denied Plaintiff's request for review on June 5, 2020, Plaintiff filed his first federal case on July 31, 2020. *See* 20-CV-5975. The parties consented to magistrate judge jurisdiction and Judge Cott issued his the 2022 SDNY Remand Opinion remanding for further proceedings on March 9, 2022. On April 8, 2025, Plaintiff filed the instant action seeking the Court's review of the ALJ decision. (ECF 1). The administrative record was filed on July 15, 2025. (ECF 9). The parties consented to

magistrate judge jurisdiction on April 10, 2025. (ECF 6). Plaintiff's motion for judgment on the pleadings was fully briefed on February 17, 2026.

## II. APPLICABLE LAW

### A. Standard of Review

A motion for judgment on the pleadings should be granted if the pleadings make clear that the moving party is entitled to judgment as a matter of law. Additionally, the Court's review of the Defendant's decision is limited to an inquiry into whether there is substantial evidence to support the Defendant's findings and whether the correct legal standards were applied. Substantial evidence is more than a mere scintilla. It only requires the existence of "relevant evidence as a reasonable mind might accept as adequate to support a conclusion," even if there exists contrary evidence. *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (same). This is a "very deferential standard of review." *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012). The Court may not determine *de novo* whether Plaintiff is disabled but must rely on the underlying record. "When there are gaps in the administrative record or the ALJ has applied an improper legal standard," an explanation of the ALJ's reasoning is warranted, or when the ALJ's rationale is unclear, the Court should remand "for further development of the evidence." *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

### B. Weighing Medical Opinions Under the Treating Physician Rule

For claims such as this one, filed before March 17, 2017, ALJs must apply the treating physician rule. Under the treating physician rule,

> "[a] treating physician's opinion is given controlling weight, provided the opinion as to the nature and severity of an impairment "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Importantly, 'to the extent that [the] record is unclear, the Commissioner has an affirmative duty to 'fill any clear gaps in the administrative record' before rejecting a treating physician's diagnosis.'"

*Jamison v. Acting Commissioner of Social Security*, 600 F. Supp.3d 304, 310 (S.D.N.Y. 2022) (collecting cases describing the importance of proper development of the record if rejecting a treating source's diagnosis or opinion); *accord*, 2022 SDNY Remand Opinion, R. 1519-22 (explaining in depth the two-step process to be followed when determining whether to give controlling weight to a treating source opinion). As Judge Cott explained, if an ALJ decides that a treating source's opinion is not to be given controlling weight, the ALJ must explicitly consider the *Burgess* factors to provide "good reasons" for doing so. *Burgess*, 537 F.3d at 129; (R. at 1522).

### C. The ALJ Must Apply a Five-Step Evaluation of Plaintiff's Disability Claim

To be awarded disability benefits, the SSA requires that a claimant have the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ makes this determination through a five-step evaluation process. First, the Plaintiff must provide evidence which supports the ALJ's determination that:

> (1) the Plaintiff is not currently engaged in substantial gainful activity;
> (2) that Plaintiff's impairment is so severe that it limits their ability to perform basic work activities;
> (3) that Plaintiff's impairment falls under one of the impairment listings in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 such that the Plaintiff may be presumed to be disabled. Absent that, the ALJ must determine the Plaintiff's Residual Functional

> Capacity ("RFC"), or their ability to perform physical and mental work activities on a sustained basis; and
> (4) the RFC, if applicable, does not allow Plaintiff to meet the physical and mental demands of his prior employment.

If the ALJ finds Plaintiff's evidence has satisfied all four of these steps, the burden then shifts to the Commissioner to prove that, based on Plaintiff's RFC, age, education, and past work experience, Plaintiff can perform some other work that exists in the national economy. *See* 20 C.F.R § 416.920(a)(4)(i)–(v). A finding that a claimant is either disabled or not disabled may be made at any time during the five-step disability determination process; once such a finding is made, no further review of the claim is necessary. *See* 20 C.F.R. § 404.1520(a).

## III. DISCUSSION

Plaintiff argues that the ALJ's post-remand decision repeats, rather than cures, the defects identified by this Court in remanding the prior ALJ decision. (ECF 16 at 14). He argues that the ALJ did not obtain updated assessments from the treating sources identified in the 2022 SDNY Remand Opinion, did not adequately develop the treatment record, and instead relied heavily on a non-examining medical expert's testimony, in defiance of the *Burgess* factors, while discounting the only treating-source medical opinion. (ECF 16 at 19-30). Plaintiff further contends that the ALJ failed to evaluate the evidence concerning work absences and time off task that were material to the disability determination. *Id.* at 29.

### A. The ALJ Failed to Develop the Record

When Judge Cott remanded the case in 2022, he explained that ALJ Solomon had failed to develop the record by getting an updated report from Ms. An, Plaintiff's treating source at the time, and should have, "*at a minimum*" (emphases added) also obtained reports from

Nickeema Lyte (Cox), Licensed Clinical Social Worker and Tom Perron, Nurse Practitioner. On remand, ALJ Solomon has, once again, failed to do the minimum as directed by Judge Cott. For Ms. An, who should have been accorded controlling weight under the treating physician rule, ALJ Solomon apparently did not even try to get an updated opinion, because, by the time Plaintiff testified at his second ALJ hearing in April 2023, he "testified [that] he no longer sees her." (R. 1438). For NP Perron, ALJ Solomon gives the same excuse, that Plaintiff testified–in 2023–that he "did not even know" who NP Perron was, and "in any event is no longer treating with him" *Id.* As to the acknowledged "gaps" in the record with respect to LCSW Lyte's treatment of Plaintiff, ALJ Solomon apparently took *no* steps, because Lyte's name is mentioned only once, when the ALJ summarizes Judge Cott's findings (that, "at a minimum," ALJ should have also obtained reports from Lyte and Perron). *Id.* This alone is reversible error: ALJ Solomon didn't even try to remediate the gaps previously found by Judge Cott.

Even ALJ Solomon's explanation of his update of the record is deficient: he asserts first that he "addressed" the gaps "suggested" by Judge Cott not by actually filling them, but "by having an impartial medical expert testify," and "attempting to obtain an MSS [medical source statement] from current treating Dr. Banez, which was unsuccessful[.]" (R. 1438-39). In sum, the ALJ relied on new testimony from Dr. Efobi, characterized by the ALJ as "an unrebuttable expert witness who had reviewed the medical file," and an unsuccessful *attempt* to obtain a medical source statement from Plaintiff's new treating physician, to develop the record. The ALJ thus had failed to obtain an updated medical source statement from any of Plaintiff's original treating sources (of three identified by Judge Cott as a "minimum"); made a single unsuccessful attempt to obtain one medical source statement in 2023 after the hearing; and decided the

case–after remand–without any treating physician statements, nothwithstanding the existence of multiple treating physicians and medical sources in the record. This is error. *See Jamison*, 600 F. Supp. 3d at 310 (S.D.N.Y. 2022) ("Courts in this Circuit have routinely held that remand is required when ALJs fail to satisfy their duty to develop the record where the only functional assessment is from a [Consultative Examiner] . . . after a single examination and [where the ALJ] failed to request (and receive) a functional assessment from the treating physician;" collecting cases).

**B. The ALJ Failed, Again, to Articulate Any *Burgess* Factors for Giving Plaintiff's Treating Source(s) Little Weight**

Notwithstanding Judge Cott's clear instructions on remand, the only medical source statement in this case remains the 2018 medical source statement from Jing An, who treated Plaintiff for individual psychotherapy at CCM in 2018. There are no medical source statements from any other treating sources, including doctors, psychologists and social workers who treated Plaintiff regularly in 2022 and 2023, and in the absence of those medical source statements, the ALJ cherry-picked from the record.[7] (*See, e.g.* R. 1754-1936.)

[7] For example, the ALJ references that Dr. Grenet, who treated Plaintiff in 2020 and June, July and September 2022 reported that in 2020, Plaintiff "appeared comfortable, conversant, and he had normal affect." (R. 1445). That visit was for "chief complaint of back pain" and a flu shot. R. 1769. For the July 2022 visit, which was a "follow up of MDD (major depressive disorder)", (R. 1755), the ALJ notes that Drs. Grenet and Chin reported "unremarkable behavior," (R. 1445). But the ALJ omitted references in the notes to past diagnoses of (as relevant here) of MDD and PTSD, a PHQ-9 score of 21, representing severe depression, (ECF 16 at n. 5), and "~4" "past psych hospitalizations." (R. 1755.) The attending note for this record also noted that Plaintiff was previously seen "last month" for depression as well, which is not discussed in the ALJ opinion at all. In August 2022, Plaintiff reported suicidal ideation and reported his past history of suicide attempts. (ECF 16 at 14, citing R. 1806). At the August visit, Plaintiff also told LCSW Cummings that he had a family history of schizoaffective disorder, and that his second suicide attempt, overdosing on Xanax, had occurred in 2021. (R. 1809).

An completed a medical source statement in November 2018[8] but her treatment of Plaintiff continued after that. In the first hearing decision in 2019, ALJ Solomon accorded "little weight" to her findings, stating that they "grossly overstate the claimant's symptoms and limitations." (R. 15). The ALJ neither discussed nor applied the *Burgess* factors; for that reason, among others, Judge Cott ordered the case remanded.

After remand, the ALJ again accorded "little weight" to Ms. An's findings, again without reference to the *Burgess* factors. (R. 1445-6). *Again*, ALJ Solomon merely states, without citations, that Ms. An's findings–from 2018–are not consistent with the medical record or "contrary to" the treatment records. As with the ALJ's prior decision, the ALJ again "reached numerous conclusions about the consistency of An's opinions and the record, which he failed to explain." (2022 SDNY Remand Opinion, R. 1543). Indeed, Judge Cott pointed out specific instances where findings of several consultative experts were in fact *consistent* with An's findings, which the ALJ repeated *verbatim* in the 2023 decision, replicating the same error. *Compare* R. 1446 (2023 ALJ decision) ("The form [An's medical source statement] indicates the claimant is unable to manage benefits, yet he currently handles his own money") *and* R. 15 (2019 ALJ decision) ("The form [An's medical source statement] indicates the claimant is unable to manage benefits, yet he currently handles his own money") *with* R. 1543 (the 2022 SDNY Remand Opinion) (identifying 2016 report of consultative psychologist Dr. Fujiwaki, 2015 evaluative assessment by Stacie Dee, 2015 work ability assessment and 2018 work ability assessment, all of which "reached the same conclusion" that Plaintiff was unemployable and

[8] In the decision, ALJ Solomon stated that she was not "an acceptable medical source; however, I have considered the opinion as that of a treating source." ECF 9 at 21 (R. 15)

*would need assistance managing his own funds* due to his history of substance abuse) (emphases added).

Moreover, the ALJ spent more time detailing the minimal effort to obtain medical source statements from LCSW Cummings and Dr. Banez (who treated Plaintiff at least six times between August 29, 2022 and November 15, 2022 for major depressive disorder and suicidal ideation) than he spent explaining how the opinions on which he relied were consistent with the medical records from those treating providers. The medical record itself reflects psychotherapy appointments with LCSW Cummings on August 29, September 30, October 6, and October 21, 2022. These records reflect three psychotherapy appointments, alone, in a span of 22 days. During this time, LCSW Cummings's notes (*see* R. 1792-1816) reflect Plaintiff's reports of suicidal ideation, moderately severe to severe depression, as well as "bipolar disorder current episode depressed w/ psychotic features" even though he was also alert, oriented, "in depressed mood with appropriate affect," clear speech and logical thought process. (R. 1803). At a psychiatric diagnostic evaluation with Dr. Banez, (R. 1786-91), Plaintiff reported two suicide attempts, a family history of mental illness, and brother "with mental illness, substance disorder" [sic] who committed suicide. (R. 1787). He was prescribed Lexapro and told to follow up in 2 weeks. (R. 1791). When Plaintiff was seen again by Dr. Banez on November 15, 2022, he reported only "minimal improvement of his depressive symptoms," and his Lexapro prescription was increased. (R. 1781, 1784). The record does not reflect later visits with Dr. Banez, although Plaintiff was told to follow up again in two weeks because he was showing "minimal progress." (R. 1784).

The ALJ's reliance on Dr. Efobi—who did not examine Plaintiff and reviewed the medical records—is troubling. Dr. Efobi testified that he considered Listings 12.03 (schizophrenia spectrum and other psychotic disorders), 12.04 (depressive, bipolar and related disorders), 12.05 (intellectual disorder), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders). (R. 1476). The ALJ adopted all of Dr. Efobi's opinion about the Paragraph B and C criteria to find that Plaintiff did not meet or equal the criteria for Listings 12.04[9] and 12.06. (R. 1442). The ALJ did not elicit any testimony about any of the other listings (12.03, 12.05, 12.15) that Dr. Efobi testified that he considered. Dr. Efobi also testified that he considered one exhibit, "15F on the MRFC," to be in conflict with his opinion and "an outlier", but the ALJ did not question him further. Exhibit B15F is Therapist An's Medical Source Statement. (R. 1211-14).

In relying on Dr. Efobi's "unrebuttable" opinion, the ALJ stated only "Dr. Efobi's opinion is consistent."[10] (R. 1447). But Dr. Efobi testified that exhibit "15F on the MRFC" conflicted with his opinion. The ALJ relied heavily on Dr. Efobi's opinion, gave Therapist An's opinion little weight, and gave no weight to any other treating physicians' opinions because there were none. This analysis turned the treating physician rule on its head.

---

[9] At the hearing Dr. Efobi twice stated that he considered 12.0**5** and 12.06 to be the "two main" listings at issue, (R. 1476), but the ALJ decision referred only to Listings 12.0**4** and 12.06.

[10] But Dr. Efobi's opinion was not consistent with other parts of the medical record or even with itself. Treating sources *other than* Therapist An referenced severe depression and mental illness signs, including suicidal ideation. And Plaintiff's counsel did question Dr. Efobi on whether someone with the levels of depression as presented in the PHQ-9 measures in the record would occasionally call in sick or show up late, to which Dr. Efobi responded, "by that depressive, are you referring to the PHQ9? . . . Yeah, somebody that has severe depression I mean suicidal probably won't be able to work. They should be in a hospital." (R. 1480).

### C. The ALJ Failed to Evaluate Plaintiff's Monthly Absences and Time Off-Task

Finally, An opined in 2018 that Plaintiff would miss three days of work per month for medical appointments, and the VE at the first hearing testified "that a hypothetical person who could not interact with supervisors and would have to miss more than one day of work per month would not be able to perform any jobs in the national economy." (2022 SDNY Remand Opinion, R. 1544). As discussed above, LCSW Cummings and Dr. Banez treated Plaintiff on multiple occasions. The medical record itself reflects psychotherapy appointments with LCSW Cummings on August 29, September 30, October 6, and October 21, 2022. These records reflect three psychotherapy appointments, alone, in a span of 22 days.

The ALJ failed to address this issue or these visits at all. The ALJ's decision cites to no evidence, not even a scintilla, to support that Plaintiff would be absent from work no more than one day a month. S*ee Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp.2d 330, 347 (E.D.N.Y. 2010) ("[A]n ALJ who makes an RFC determination in the absence of [a] supporting expert medical opinion has improperly substitute[d] his own opinion for that of a physician, and has committed legal error.")

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is **GRANTED** and this case is **REMANDED** for further proceedings consistent with this Opinion and Order. The Court further directs that the matter should be remanded to a different Administrative Law Judge for *de novo* review.

The Clerk is respectfully directed to enter final judgment consistent with this decision and then close the file.

**SO ORDERED.**

*/s/ Ona T. Wang*
**Ona T. Wang**
United States Magistrate Judge

Dated: September 25, 2026
New York, New York